ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| MILAGROS RÍOS APONTE; JUAN RAMÓN CORTÉS PÉREZ; CARMEN M. RÍOS APONTE Y LA SOCIEDAD LEGAL DE GANANCIALES entre estos; LAURA RÍOS APONTE; YOLANDA RÍOS APONTE; ENID COTTO QUILES Y MARÍA M. RÍOS APONTE | | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Utuado |
| Apelados | KLAN202300786 | Caso Núm.: UT2021CV00427 |
| v. | | |
| DENNIS DE LA PAZ Y DIANA DE LA PAZ, Sucesores de Celestino de la Paz Fuertes E Ivette Zoraida González Sierra, ABC, XYZ y RRR | | Sobre: Destrucción de Camino Público, Violación de Derecho de Paso, Injunction Posesorio, Daños y Perjuicios |
| Apelantes | | |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

*Martínez Cordero, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de diciembre de 2023.

Comparece el señor Dennis De La Paz González y la señora Diana De La Paz González (en adelante, parte apelante), mediante un *Recurso de Apelación*, para solicitarnos la revisión de la *Sentencia Parcial* emitida el 6 de agosto de 2023, y notificada el 10 de agosto de 2023, por el Tribunal de Primera Instancia, Sala Superior de Utuado (en adelante, TPI).[1] Mediante el dictamen apelado, el foro primario, luego de concluir que la servidumbre establecida en el camino Piedra Gorda (en adelante, Camino) no había estado en desuso por los últimos veinte (20) años ni perdido su utilidad, ordenó a la parte apelante a restablecer y reconstruir la parte del

---

[1] Apéndice de la parte apelante, a las págs. 1-15.

Número Identificador

RES2023_____

Camino interrumpido por la excavación y a devolverlo a su estado anterior a la excavación, de forma tal que se pueda seguir utilizando por la parte apelada y los vecinos de la comunidad.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia Parcial* apelada.

**I**

El 19 de octubre de 2021, se presentó una *Demanda* sobre destrucción de camino público, violación de derecho de paso, interdicto posesorio y daños y perjuicios por las señoras Milagros, Laura, Yolanda y Mercedes M., todas de apellidos Ríos Aponte, la señora Enid Cotto Quiles, el señor Juan Ramón Cortes Pérez, la señora Carmen M. Ríos Aponte y la Sociedad Legal de Gananciales compuesta por estos últimos dos (en adelante, parte apelada).[2] Mediante la *Demanda,* se solicitó al TPI que: (i) reafirmara la *Sentencia* emitida en el caso alfanumérico L AC93-0013[3]; (ii) emitiera una orden de cese y desista a la parte apelante para que se abstuvieran de continuar con la remoción de tierra del Camino y procedieran a realizar las obras necesarias para garantizar el paso provisional de la parte apelada y otros vecinos en lo que se reconstruía el mismo a su estado original; (iii) determinara que el Camino es uno público y que la parte apelante no tienen título sobre el mismo; y, (iv) determinara que la parte apelante le ha causado daños y perjuicios de carácter continuo y acumulativo a la parte apelada e incurrido en temeridad.[4]

Por su parte, el 5 de enero de 2022, la parte apelante presentó *Contestación a la Demanda.*[5] Allí, negaron prácticamente todas las alegaciones de la *Demanda* y presentaron como defensa afirmativa

---

[2] Apéndice de la parte apelante, a las págs. 16-24.
[3] *Id.,* a las págs. 51-61.
[4] *Id.,* a las págs. 21-22.
[5] *Id.,* a las págs. 25-26.

la disolución de la servidumbre al amparo del Artículo 964 (a) y (h) del Código Civil de Puerto Rico.[6]

De la *Minuta* del 16 de febrero de 2022, se desprende que en el presente caso se llevó a cabo una *Vista Ocular* a la cual compareció una de las apeladas la señora Milagros Ríos Aponte, representada por su abogado, así como el apelante el señor Dennis de la Paz González, representado por su abogado.[7]

Como parte de las incidencias acaecidas durante el trámite del caso, el 10 de marzo de 2022, la parte apelada presentó una *Solicitud de Sentencia Sumaria Parcial y Solicitud de Remedio Provisional de Cese y Desista Regla 56.5 de Procedimiento Civil.*[8] Por su parte, el 2 de mayo de 2022, la parte apelante presentó una *Oposición a Moción de Sentencia Sumaria.*[9]

El 18 de julio de 2022, el foro primario emitió una *Resolución* mediante la cual dispuso sobre dos (2) asuntos.[10] En *primer* lugar, denegó una *Solicitud de Sentencia Sumaria Parcial* presentada por la parte apelada. Sobre el particular, el foro primario expresó haber evaluado, además, la correspondiente oposición a la solicitud presentada por la parte apelante. En lo pertinente, el foro primario emitió diez (10) determinaciones de hechos que estimó no estaban en controversia.[11]

En su *Resolución,* el foro primario tomó conocimiento judicial de la *Sentencia* dictada el 27 de marzo de 1996, en el caso L AC93-0013, así como la *Sentencia* emitida por el Tribunal de Apelaciones en el caso KLAN9700044, el 30 de diciembre de 1997.[12] Expresó que ambos foros determinaron que existe una servidumbre por tiempo inmemorial y de signo aparente, que le acreditaba a la parte apelada

---

[6] 31 LPRA § 8561, Art. 964 (a) y (h).
[7] Apéndice de la parte apelante, a las págs. 27-29.
[8] Apéndice de la parte apelada, a las págs. 18-46. 32 LPRA Ap. V, R. 56.5.
[9] *Id.,* a las págs. 57-80.
[10] Apéndice de la parte apelante, a las págs. 32-43.
[11] *Id.,* a la pág. 35.
[12] *Id.,* a las págs. 62-82.

su derecho de paso hacia la intersección con la carretera estatal núm. 140. Sin embargo, razonó que habían surgido controversias de hechos en torno a la extinción de dicha servidumbre lo que ameritaba la celebración de un Juicio en su Fondo.

El *segundo* asunto sobre el cual dispuso el foro primario en la referida *Resolución* fue en torno a una *Solicitud de Remedio Provisional de Cese y Desista Regla 56.5 de las Reglas de Procedimiento Civil* presentada por la parte apelada.[13] Sobre el particular, el TPI dispuso que se ordenaba a la parte apelante a paralizar cualquier obra y abstenerse de llevar a cabo cualquier acto relacionado con la destrucción del Camino mientras se dilucidaban los procedimientos judiciales. Determinó, además, que no procedía la imposición de fianza ni el pago de un seguro por responsabilidad pública a la parte apelante. En atención a lo resuelto: (i) ordenó a la parte apelante, de forma temporera hasta que se resolviera el caso de autos, a hacer disponible a la parte apelada el camino alterno propuesto u otro acceso temporero, asegurándose de que el paso de las personas y tránsito de vehículos fuese asequible y seguro; y, (ii) dispuso que, de recaer sentencia favorable a la parte apelada, el tramo obstruido en el Camino debería ser reestablecido a su condición original. Por tanto, sostuvo que el restablecimiento permanente del Camino quedaba sujeto a la adjudicación final del caso.

Luego de varios incidentes procesales, finalmente el 17 de abril de 2023, se celebró el Juicio en su Fondo.[14] Allí, el foro primario recibió tanto prueba testifical de ambas partes, así como prueba documental en conjunto. La prueba testifical de la parte apelada consistió en: el señor Ángel Rivera Figueroa, el señor Jaime González Rodríguez, la señora Laura Ríos Aponte y la señora

---

[13] 32 LPRA Ap. V, R. 56.5.
[14] Apéndice de la parte apelante, a las págs. 44-47.

Milagros Ríos Aponte. Por su parte, la prueba testifical de la parte apelante consistió en: el señor Ángel Luis González Meléndez, el señor Dennis De La Paz González, la señora Diana De La Paz González y el señor Heriberto Casanovas Torres. La prueba documental conjunta presentada sin controversia fue de dos (2) Exhibits: (i) Escritura #10 partición y adjudicación de compraventa del 5 de abril de 2018; y, (ii) Escritura #133 compraventa del 12 de noviembre de 2013.

El Juicio en su Fondo comenzó con el interrogatorio directo por parte del representante legal de la parte apelada al señor Ángel Rivera Figueroa. El señor Ángel Rivera Figueroa testificó tener una propiedad en el Barrio de Mameyes.[15] Explicó que la propiedad es una parcela de gobierno que fue obtenida en usufructo y que lleva allí cerca de veinte (20) años.[16] Testificó que conocía el Camino ya que ha transitado por este alrededor de veintiséis (26) años por razones de trabajo o para transportar los productos agrícolas que cultiva.[17] Sobre el Camino, indicó que comienza en la carretera 146, km. 8.1, y sale a la carretera 140, siendo la finca del Doctor Bibiloni parte y llegando hasta Jayuya.[18] Además, atestiguó que el Camino ha sido utilizado por su esposa cuando llevaba a sus hijos a la escuela, quienes testificó tenían las edades de 20, 16 y 14 años.[19]

Continuó testificando que, debido a que no puede utilizar el Camino, utiliza otro camino que lleva a la carretera 146.[20] Explicó que el camino que lleva a la carretera 146 es peligroso debido a que tiene muchas cuestas, una pendiente que cuando llueve hay derrumbes y un puente llamado Bado, que es difícil pasar o se queda

---

[15] En la Transcripción de la Prueba Oral (en adelante, TPO) a la pág. 5, líneas 22-23 y pág. 6, línea 1.
[16] En la TPO pág. 6, líneas 5-8.
[17] *Id.,* pág. 6, líneas 15-23 y pág. 7, líneas 4-7.
[18] *Id.,* pág. 7, líneas 12-20.
[19] *Id.,* pág. 5, líneas 20-21 y pág. 8, líneas 8-11.
[20] *Id.,* pág. 9, líneas 21-22.

sin paso cuando llueve.[21] A diferencia, indicó que el Camino era más seguro ya que no hay cuestas, no existe el miedo a derrumbes, no existe un río que obstruya el camino o en el cual pueda surgir un golpe de agua.[22] Testificó que toda la comunidad transitaba por el Camino y que no es correcta la alegación de que este se ha dejado de utilizar en los últimos veinte (20) años.[23] Añadió que, antes de que se realizara la excavación, el Camino era utilizado.[24]

Entonces, comenzó el contrainterrogatorio por parte del representante legal de la parte apelante. Testificó que, para el año pasado en el mes de junio, el Camino se estaba utilizando.[25] Además, explicó que antes de romperse el Camino, aunque no estaba embreado, era transitable y así se utilizaba.[26]

El segundo testigo en prestar testimonio por la parte apelada fue el señor Jaime González Rodríguez.[27] Declaró que reside en el Barrio Mameyes Abajo, Sector Yunes y es agricultor.[28] A preguntas de su representante legal, testificó que para llegar a su propiedad usa la carretera 140 y 146 para entrar hacia el Camino.[29] Para llegar a su propiedad ahora mismo está usando la carretera de la ferretería porque el otro Camino lo cortaron y la que hicieron -la alterna- es incómoda para pasar.[30] Declaró que antes de que se hiciera la remoción de tierra en el Camino, este lo usaba.[31]

Expresó que, desde el año 2021 hacia atrás, usó el Camino como por diecisiete (17) o dieciocho (18) años y que se interrumpió el 21 de junio del año 2021.[32] En cuanto al tramo de la carretera 146, testificó que la que sale a dicha carretera es una cuesta que

---

[21] *Id.,* pág. 10, líneas 6-13.
[22] *Id.,* pág. 12, líneas 1-9.
[23] *Id.,* pág. 14, líneas 18-23; pág. 15, líneas 20-22; y, pág. 16, líneas 1-2 y 12-14.
[24] *Id.,* pág. 16, líneas 1-2 y 12-14.
[25] *Id.,* pág. 19, líneas 15-18.
[26] *Id.,* pág. 21, líneas 6-11.
[27] *Id.,* págs. 23-36.
[28] *Id.,* pág. 24, línea 2-15.
[29] *Id.,* pág. 26, líneas 1-13.
[30] *Id.,* pág. 28, líneas 14-22 y pág. 29, línea 1-3.
[31] *Id.,* pág. 29, líneas 13-17.
[32] *Id.,* pág. 29, líneas 18-23 y pág. 30, líneas 1-2.

uno baja hasta el Río Yunes y es peligroso. Abonó que cuando llueve quedan incomunicados porque el Río Yunes brinca encima del puente Bado y hay que esperar que baje el río.[33] Manifestó que, previo al año 2021, el Camino se usaba, pero para el Huracán María se tapó para entrar a la carretera 146 y los del "ARMY" fueron los que se arriesgaron y destaparon. En ese tiempo salían por la carretera 140.[34]

Durante el contrainterrogatorio, el señor Jaime González Rodríguez fue interrogado sobre el mantenimiento que se le hubiese dado al Camino a lo que respondió que "nosotros entre todos, pues, lo limpiábamos" y que la última vez que se le dio mantenimiento fue en el año 2020 o en el 2021.[35] Sostuvo que el prefería el Camino en vez de usar la carretera 146 porque es más seguro que subir la cuesta.[36] Explicó que él vendía café en Mameyes y era más viable llevarlo por el Camino porque era más cerca y para bajar el carro cargado, la cuesta es más peligrosa. Declaró, además, que se podía pasar por el Camino y que no estaba tan mal, porque "si estuviera tan malo que pudiera desbaratar el carro yo no lo meto por ahí".[37] A preguntas del representante legal de la parte apelante, contestó que la última vez que usó el camino fue como en el año 2021.[38]

La tercera testigo presentada por la parte apelada fue la señora Laura Ríos Aponte.[39] En el interrogatorio directo declaró que reside en el Barrio Mameyes, Sector Piedra Gorda de Utuado hace setenta y seis (76) años y que conoce el Camino.[40] Expresó que ella usaba el Camino desde niña para ir a la escuela y para todo pero estaba inservible porque removieron el terreno.[41] A preguntas del

---

[33] *Id.,* pág. 30, líneas 6-19.
[34] *Id.,* pág. 30, líneas 21-23 y pág. 31, líneas 1-18.
[35] *Id.,* pág. 32, líneas 12-18 y 19-22.
[36] *Id.,* pág. 33, líneas 1-14.
[37] *Id.,* pág. 33, líneas 3-7 y pág. 34, líneas 11-22.
[38] *Id.,* pág. 35, líneas 1-4.
[39] *Id.,* págs. 38-58.
[40] *Id.,* pág. 38, líneas 22-23, pág. 39, líneas 1-4 y pág. 42, líneas 4-5.
[41] *Id.,* pág. 42, líneas 11-15 y pág. 43, líneas 20-21.

representante legal de la parte apelante explicó que hicieron un camino alterno, pero los carros no pueden pasar porque es peligroso y cuando llueve no se puede pasar.[42] Expresó que el Camino fue destruido hace como dos (2) o tres (3) años, pero que antes de eso, ella lo utilizaba.[43]

Durante el contrainterrogatorio declaró que tenía un vehículo Pathfinder y que prefería utilizar el Camino en vez de la carretera 146.[44] Además, expresó que le daban mantenimiento al Camino, que lo limpiaban.[45] Declaró que ella usaba el Camino para hacer sus diligencias, que desde del 2021 no se puede usar el Camino y que la última vez que lo utilizó fue en ese mismo año.[46] En relación al Camino, la testigo sostuvo que el mismo nunca estuvo asfaltado, estaba transitable porque era un camino, es decir, que se podía caminar y los autos podían pasar.[47] Durante el turno del redirecto, declaró que el camino alterno está en un sitio peligroso y que si llueve no se puede pasar, así como que tampoco puede pasar por el Camino, por donde excavaron.[48] No hubo preguntas en recontrainterrogatorio.

La última testigo presentada por la parte apelada fue la señora Milagros Ríos Aponte.[49] Declaró haber nacido y haberse criado en el Barrio Mameyes, Sector Piedra Gorda.[50] También, declaró que reside en el referido lugar y que trabaja en San Juan decorando eventos en hoteles.[51] A preguntas de su representante legal atestiguó que conoce el Camino desde hace setenta y ocho (78) años y que lo utiliza

---

[42] *Id.,* pág. 44, líneas 1-10.
[43] *Id.,* pág. 44, líneas 17-23.
[44] *Id.,* pág. 46, líneas 6-11.
[45] *Id.,* pág. 46, líneas 17-23, pág. 47, líneas 1-3 y pág. 48, líneas 3-4.
[46] *Id.,* pág. 49, líneas 15-23 y pág. 50, líneas 3-4.
[47] *Id.,* pág. 52, líneas 9-18.
[48] *Id.,* pág. 58, líneas 7-12.
[49] *Id.,* págs. 59-82.
[50] *Id.,* pág. 60, líneas 10-11.
[51] *Id.,* pág. 60, líneas 16 y 20-23 y pág. 61, líneas 3-5.

para salir a trabajar y para hacer sus diligencias.[52] La testigo describió el Camino.[53]

Sostuvo que estuvo presente en la *Vista Ocular* celebrada por el Tribunal en este caso.[54] Declaró que la casa del señor Dennis De La Paz González está dentro del Camino.[55] Explicó que actualmente no puede salir por la carretera 140 por la excavación profunda realizada por el señor Dennis De la Paz González.[56] También declaró que, en cuanto al camino alterno preparado por el señor Dennis De la Paz González, no lo ve como un camino con configuración adecuada por la compactación del terreno y le preocupa que se pueda deslizar, le provoca miedo y no lo usa.[57] Entonces, testificó que usa otra salida que, si va bajando, tiene pendientes y taludes y si ha llovido tiene desprendimientos.[58] Atestiguó que cuando pasa lo anterior les cierran la carretera.[59]

En relación al Camino, declaró que no lo está usando por la parte que pasa frente a la casa del señor Dennis De la Paz González por la excavación profunda que hay y que el camino alterno no le funciona.[60] Sostuvo que, para poder salir por el camino alterno, hay que tener mucho cuidado para no caer en la pendiente y de noche no se puede inclusive bajar porque no hay luz.[61] Además, expresó que tiene que pasar por el Río Yunes pero cuando hay buen tiempo porque si hay lluvia no se puede pasar.[62] Lo anterior, porque el Río Yunes sube, pasa sobre el puente Bado y limita el paso.[63] En cuanto

---

[52] *Id.,* pág. 61, líneas 16-22 y pág. 62, líneas 1-2.
[53] *Id.,* págs. 62-63.
[54] *Id.,* pág. 63, líneas 14-15.
[55] *Id.,* pág. 63, líneas 19-23 y pág. 64, líneas 1-5.
[56] *Id.,* pág. 65, líneas 7-11.
[57] *Id.,* pág. 65, líneas 12-21.
[58] *Id.,* pág. 65, líneas 22-23 y pág. 66, líneas 1-11.
[59] *Id.,* pág. 66, líneas 12-14.
[60] *Id.,* pág. 67, líneas 18-21 y pág. 68, líneas 1-4.
[61] *Id.,* pág. 68, líneas 5-12.
[62] *Id.,* pág. 68, líneas 13-23.
[63] *Id.,* pág. 69, líneas 1-3.

al Camino, declaró que lo dejó de usar en junio del año 2021, pero anterior a esta fecha, lo usaba periódicamente por décadas.[64]

La testigo negó que el Camino estuviese en desuso por más de veinte (20) años, y abonó que, en el año 2005, recayó una *Sentencia* donde ella era la promovente en la cual se tuvieron que eliminar los portones que estaban en el Camino.[65] En el turno del contrainterrogatorio, la testigo declaró que le ha dado mantenimiento al Camino consistente en corte de árboles, limpieza de orillas, relleno de piedra en algunas áreas y que la última vez que se hizo fue aproximadamente en julio del año 2021.[66] Luego, en el redirecto declaró que el camino provisional no tiene la consistencia para uno moverse.[67]

Al concluir los turnos, el Tribunal expresó que haría una pregunta a la señora Milagros Ríos Aponte y que luego los representantes legales de las partes podrían preguntar sobre las mismas. El Tribunal preguntó de qué forma o cuál medio de transporte utilizaba cuando hacía uso del Camino. La testigo declaró que usaba un Jeep 4 x 4, que ese es el que siempre lo ha utilizado porque desde el año 1999, siempre ha tenido Jeep.[68] Luego, a preguntas de su representante legal declaró que no puede pasar con el Jeep por el área de la excavación y porque tiene miedo a los derrumbes, expresando que en cuanto a los derrumbes se refería al camino alterno. Declaró que en una ocasión llegó a usar el camino alterno, pero le causó terror por las pendientes y porque allí hay agua subterránea y está enlodado.[69] Finalmente, a preguntas de la representación legal de la parte apelante declaró que allí hay unas venas de agua por toda la finca.[70]

---

[64] *Id.,* pág. 69, líneas 4-15.
[65] *Id.,* pág. 69, líneas 21-23, pág. 70 y pág. 71, líneas 1-5.
[66] *Id.,* pág. 73, líneas13-23 y pág. 74, líneas 1-4.
[67] *Id.,* pág. 77, líneas 4-6.
[68] *Id.,* pág. 79, líneas 21-23 y pág. 80 líneas 1-6.
[69] *Id.,* pág. 81, líneas 10-23.
[70] *Id.,* pág. 82, líneas 13-16.

Entonces comenzó el turno de prueba de la parte apelante. Según se desprende de la transcripción de la prueba oral (en adelante, TPO), el primer testimonio recibido por el foro primario fue el del señor Ángel Luis González Meléndez.[71] Declaró ser residente del Barrio Don Alonso en Utuado.[72] Testificó tener equipo pesado y daba servicios de limpieza de caminos desde hace veinticinco (25) años.[73] A preguntas de la representación legal de la parte apelada, sostuvo que no había visto personas pasar por el Camino hasta el último trabajo que hizo en la finca.[74] Declaró que hizo un trabajo a principios de junio del año 2020, un solar.[75] Manifestó que según su apreciación el Camino en ese momento era inexistente e intransitable así como que no vio a nadie allí cuando hizo el trabajo.[76]

Luego, en el contrainterrogatorio admitió que cuando se arregla el Camino por el señor Dennis De La Paz González o por él, los demás cogen pon.[77] Continuó declarando que él fue quien hizo la excavación en el Camino y que estuvo haciendo dicha tarea aproximadamente dos (2) meses en un horario de 8:00 a.m. a 3:00 p.m.[78] Admitió que no hacía el trabajo de noche.[79]

El señor Dennis De La Paz González fue el próximo testigo en declarar y es uno de los apelantes.[80] A preguntas de su representante legal, declaró que residía en la finca y admitió que había un Camino.[81] Declaró que no veía a nadie pasar por el Camino desde que hicieron la carretera de las parcelas del Sector Yunes.[82] A preguntas de su representante legal, testificó que no ha visto que

---

[71] *Id.,* págs. 85-96.
[72] *Id.,* pág. 86, línea 1-2.
[73] *Id.,* pág. 86, líneas 3-11.
[74] *Id.,* pág. 86, líneas 12-19.
[75] *Id.,* pág. 87, líneas 5-11.
[76] *Id.,* pág. 87, líneas 20.
[77] *Id.,* pág. 90, líneas 20-21.
[78] *Id.,* pág. 91, líneas 9-13 y pág. 92, líneas 17-23.
[79] *Id.,* pág. 93, líneas 1-2.
[80] *Id.,* págs. 96-108.
[81] *Id.,* pág. 97, líneas 2-3 y 13-14.
[82] *Id.,* pág. 98, líneas 1-15.

le den mantenimiento al Camino.[83] También, declaró que nunca ha visto a nadie usando el Camino desde el año 2000, cuando hicieron las parcelas.[84] Sostuvo que vivió en ese lugar hasta hacía como tres (3) años.[85]

En el contrainterrogatorio, declaró estar en dicho lugar las veinticuatro (24) horas al día, para luego admitir que salía cuando tenía que hacer gestiones y a preguntas de la representación legal de la parte apelada, también admitió que nadie está veinticuatro (24) horas en un lugar.[86] Luego, en el redirecto, declaró que en el tiempo en que está en la finca no ha visto a nadie usando el Camino.[87]

La señora Diana De La Paz González fue la próxima testigo presentada por la parte apelante, quien es una de las apelantes.[88] Testificó ser residente de Utuado. Declaró que, para uso diario, el Camino dejó de utilizarse hace veinte (20) años.[89] Atestiguó "[q]ue alguien suba y pasee por allí es otra cosa, pero uso diario…yo no he visto a nadie".[90] Sostuvo que al Camino no se le ha dado mantenimiento.[91] En el contrainterrogatorio declaró que es doctora y que tiene un horario regular de trabajo.[92] Admitió que si está en su oficina entonces no está en la propiedad donde está el Camino.[93]

El último testimonio presentado por la parte apelante fue el del señor Heriberto Casanovas Torres.[94] En el interrogatorio directo declaró que era Oficial del precinto de Mameyes desde el año 2002.[95] Testificó que, durante sus turnos, cuando ha patrullado por el área del Camino no ha visto a nadie pasar por allí.[96] Admitió desconocer

---

[83] *Id.,* pág. 98, líneas 20-22.
[84] *Id.,* pág. 99, líneas 9-14.
[85] *Id.,* pág. 104, líneas 21-22.
[86] *Id.,* pág. 105, líneas 9-10, pág. 105, línea 11 y pág. 106, línea 17.
[87] *Id.,* pág. 108, líneas 10-12.
[88] *Id.,* págs. 109-114.
[89] *Id.,* pág. 110, líneas 3-4.
[90] *Id.,* pág. 110, líneas 3-6.
[91] *Id.,* pág. 110, líneas 20-21.
[92] *Id.,* pág. 112, líneas 13-18.
[93] *Id.,* pág. 112, líneas 15-21.
[94] *Id.,* págs. 123-129.
[95] *Id.,* pág. 123, líneas 18-23.
[96] *Id.,* pág. 124, líneas 4-20.

a la parte apelada y que solo conoce a los que residen en el área y que sus turnos no son de veinticuatro (24) horas.[97]

Producto del juicio en su fondo, el TPI emitió la *Sentencia Parcial* apelada el 6 de agosto de 2023, notificada el 10 de agosto de dicho año.[98] En ella, dispuso que la servidumbre de paso por signo aparente reconocida en la Sentencia del caso alfanumérico L AC93-0013 y confirmada mediante la Sentencia emitida por el Tribunal de Apelaciones en el caso alfanumérico KLAN9700044, sigue vigente en el Camino Piedra Gorda del barrio Mameyes Abajo de Utuado que grava la propiedad de la parte apelante, por tanto, concluyó que no había prescrito. En lo pertinente, el foro primario emitió treinta siete (37) determinaciones de hechos que estimó no estaban en controversia, a saber:

1. La parte demandada se compone de los miembros de la Sucesión de Celestino De La Paz Fuertes e Ivette Zoraida González Sierra, compuesta por Dennis y Diana, ambos de apellidos De La Paz González.[99]
2. La parte demandada es propietaria de la finca objeto de este litigio según consta en la Escritura Núm. 10 sobre partición, adjudicación y compraventa otorgada el 5 de abril de 2018.[100]
3. La descripción de la finca en la mencionada escritura es la siguiente:
   RUSTICA: Parcela radicada en el Barrio Mameyes, del término municipal de Utuado, Puerto Rico, con una cabida superficial de Ciento Cinco punto Noventa y Una Cuerdas (105.91 cdas). En Lindes: por el Norte, con José Tulla, Sucesión Valentín y parte con una parcela de Uno punto Setenta y Cinco (1.5) cuerdas segregada de esta finca; por el SUR, José Tulia, José Pérez Pastrana, Hacienda Isolina de Márquez y Compañía y en parte con una parcela de Uno punto Setenta y Cinco (1.75) cuerdas segregada de esta finca; ESTE, Narciso Sierra y Sucesión Valentín; OESTE, con José Tulla y José Pérez Pastrana.
   Inscrita al folio Cincuenta (50) del tomo Quinientos Setenta y Seis (576) de Utuado, finca número Diez Mil Trescientos Cincuenta y Ocho (10,358). Véase el exhibit 1.
4. La finca de la parte demandada está ubicada en el Barrio Mameyes del Municipio de Utuado.[101]

---

[97] *Id.,* pág. 127, líneas 14-18 y pág. 128, líneas18-23.
[98] Apéndice de la parte apelante, a las págs. 1-15.
[99] Determinación de hecho #1 de la *Resolución* del 18 de julio de 2022.
[100] Determinación de hecho #2 de la *Resolución* del 18 de julio de 2022.
[101] Determinación de hecho #3 de la *Resolución* del 18 de julio de 2022.

5. La parte demandada adquirió dicha propiedad mediante herencia de su padre y madre Celestino De La Paz Fuertes e Ivette Zoraida González Sierra y por la compra a la tercera coheredera, Ivette De La Paz González, de su participación. Véase exhibit 1.

6. Mediante la Sentencia dictada el 27 de marzo de 1996 y notificada el 10 de abril de dicho año por el Tribunal de Primera Instancia, Sala Superior de Utuado en el caso LAC93-0013, se declaró sin lugar una demanda de negatoria de servidumbre y daños y perjuicios[102] presentada por Celestino de La Paz Fuertes y su esposa Ivette Zoraida González Sierra y la Sociedad Legal de Bienes Gananciales (parte demandante reconvenida en dicho caso) y se declaró ha lugar una reconvención mediante la cual se decretó la existencia de una servidumbre de paso de tiempo inmemorial y de signo aparente sobre la finca antes descrita, en aquel entonces, perteneciente a los mencionados demandantes, como vía de acceso a favor de la parte demandada de dicho caso (miembros de la comunidad del barrio Mameyes Abajo de Utuado).[103]

7. El Tribunal de Apelaciones confirmó la sentencia recurrida respecto a la existencia de dicha servidumbre a través de la Sentencia emitida el 30 de diciembre de 1997 en el caso núm. KLAN9700044.[104]

8. La parte demandada mediante la Escritura Núm. 133 de Compraventa del 12 de junio de 2013[,] adquirió por partes iguales una casa con una parcela de una cuerda y setenta y cinco centímetros que colinda con el camino vecinal Piedra Gorda donde está constituida la servidumbre de paso por signo aparente y tiempo inmemorial y provee acceso de dicho camino a la carretera estatal 140. Véase exhibit 2.

9. La propiedad de la parte demandada constituía el predio sirviente de la servidumbre de paso establecida en el camino Piedra Gorda reconocida en el caso núm. LAC93-0013.[105]

10. El camino vecinal Piedra Gorda comienza en el kilómetro 42.1 de la carretera 140, donde ubica la casa de Dennis de la Paz, contigua al camino vecinal donde se constituyó el predio sirviente de la servidumbre de paso, y termina en el barrio Limón en la carretera 146, kilómetro 8.1.

11. Desde agosto de 2021, aproximadamente, la parte demandada llevó a cabo una remoción de terreno mediante equipo pesado en el Camino Piedra Gorda[106] afectando la servidumbre de paso.

12. El camino Piedra Gorda, antes de ser interrumpido por la parte demandada, no estaba asfaltado.

---

[102] Determinación de hecho #4 de la *Resolución* del 18 de julio de 2022.
[103] Determinación de hecho #5 de la *Resolución* del 18 de julio de 2022.
[104] Determinación de hecho #6 de la *Resolución* del 18 de julio de 2022.
[105] Determinación de hecho #7 de la *Resolución* del 18 de julio de 2022.
[106] Determinación de hecho #8 de la *Resolución* del 18 de julio de 2022.

13. Existe una vía alterna en una parte del Camino Piedra Gorda que atraviesa el Río Yunes y conduce hacia la carretera núm. 146.[107]

14. E[n] un tramo de la carretera 146 pasa un puente bajo que cuando llueve y suben las crecidas del agua, bloquean el paso.

15. La parte demandada consintió al uso de un camino alterno ubicado en la propiedad de la parte demandada que fue utilizado por las partes durante la inspección ocular celebrada el 16 de febrero de 2022 para que la parte demandante pueda acceder a su propiedad[108] por el camino Piedra Gorda.

16. El testigo Ángel M. Rivera Figueroa tiene una propiedad en el área de Mameyes de Utuado en usufructo (parcela de gobierno) y lleva allí por cerca de 20 años; es agricultor; trabaja con cítricos, plátanos, café y tiene proyecto de zumo de limón y parcha; conoce el camino vecinal Piedra Gorda y llevaba transitando más de 16 años y lo ha utilizado para trabajar y llevar su mercancía, incluyendo café; dejó de usarlo cuando la parte demandada hizo la excavación e interrumpió el paso.

17. Luego de la celebración de la inspección ocular el 16 de febrero de 2022, se les dio autorización a las partes de pasar por una vía alterna, utilizada en la misma inspección ocular, en lo que se dilucidaba la controversia del caso, y el testigo Ángel M. Rivera Figueroa lo usó en una ocasión en un vehículo 4 x 4, pero es peligroso y no lo ha vuelto a usar ya que tiene un semi codo en la parte baja de la pendiente en una curva lo que dificulta el paso.

18. El testigo Ángel M. Rivera Figueroa actualmente está usando la otra parte del camino Piedra Gorda que va a la carretera 146.

19. Por el camino Piedra Gorda que lleva a la carretera 140 no hay puentes con crecidas de agua que dificulten el paso cuando llueve.

20. El Sr. Ángel M. Rivera Figueroa utilizaba el camino de Piedra Gorda con una guagua pick up 4 x 4 antes de que se rompiera el camino por la parte demandada; el camino no estaba embreado.

21. El testigo Jaime Gómez Rodríguez vive en el barrio Mameyes Abajo, sector Yunes; es agricultor de café y plátano y su finca está en ese lugar; usaba las Carreteras 140 y 146 para llegar a su propiedad; por la carretera 146 entra por el lado de ferretería comercial Limón; por la carretera 140 del barrio Mameyes de Utuado, entraba al camino Piedra Gorda pasando por el lado de la casa de la parte demandada.

22. El testigo Jaime Gómez Rodríguez usó el camino Piedra Gorda por un periodo de 17 a 18 años, pero dejó de usarlo cuando se interrumpió por el demandado al cortar parte del camino por la excavación.

23. Actualmente el testigo Jaime Gómez Rodríguez solamente usa la carretera 146 para llegar a su propiedad ya que la vía alterna establecida, luego de

---

[107] Determinación de hecho #9 de la *Resolución* del 18 de julio de 2022.
[108] Determinación de hecho #10 de la *Resolución* del 18 de julio de 2022.

la vista ocular, es incómoda y peligrosa en una curva que hay que dar para atrás y adelante.

24. Luego del huracán María en el 2017[,] el camino a través de la carretera 146 estuvo tapado y la vía de uso que utilizaba la parte demandante y el testigo Jaime Gómez Rodríguez era por la carretera 140 a través del camino de Piedra Gorda.

25. El testigo Jaime Gómez Rodríguez utilizó por última vez el camino de Piedra Gorda para entregar los primeros granos de café en el 2021[,] ya que para junio de dicho año se topó con que el camino estaba interrumpido.

26. La demandante Laura Ríos Aponte reside en el barrio Mameyes, sector Piedra Gorda en Utuado desde hace 76 años; conoce el camino vecinal Piedra Gorda porque nació ahí.

27. La demandante Laura Ríos Aponte utilizaba el camino vecinal Piedra Gorda desde que era una niña para ir a la escuela y para todo, tanto a pie como en una guagua, y lo dejó de usar en el 2021 cuando se interrumpió; ese es el mismo camino que pasaba por la casa de Celestino de la Paz (padre ya difunto de los demandados).

28. La demandante Milagros Ríos Aponte reside en el barrio Mameyes sector Piedra Gorda en Utuado; conoce el camino vecinal Piedra Gorda desde hace 68 años y lo usaba para ir a trabajar y hacer diligencias.

29. La demandante Milagros Ríos Aponte no puede salir por la carretera 140 por la excavación profunda realizada por el codemandado Dennis de la Paz que interrumpió el camino Piedra Gorda.

30. La demandante Milagros Ríos Aponte usaba periódicamente el camino Piedra Gorda durante los últimos 25 a 60 años.

31. Desde el 1999 la demandante Milagros Ríos Aponte utiliza un jeep 4 x 4.

32. El testigo Ángel Luis González Menéndez tiene equipo pesado y él brinda su servicio cuando los agricultores lo piden; lleva sobre 25 años dando servicio; las veces que ha trabajado por el camino Piedra Gorda no ha visto pasar personas por el camino, pero no está todo el tiempo allí metido; ha trabajado como 15 veces con el demandado Dennis de la Paz y trabajó con su padre Celestino de la Paz; su horario de trabajo era de 8am a 3pm y cuando llovía se iba antes.

33. El testigo Ángel Luis González Menéndez trabajó por última vez el camino de Piedra Gorda a principio de junio de 2021 e hizo una excavación con permiso del dueño Dennis de la Paz que le tomó como 2 meses en horario de 8 am a 3 pm.

34. Los demandados le pagan al testigo Ángel Luis González Menéndez por su trabajo y lleva muchos años trabajando con ellos.

35. Hace 3 años que el demandado Dennis de la Paz González vivía en el lugar por donde pasa el camino de Piedra Gorda; reconoció que no estaba en su propiedad todo el tiempo (24 horas del día).

36. La demandada Diana de la Paz González ocupa la casa contigua al camino Piedra Gorda; reconoció que

no puede estar 24 horas en su propiedad, pero no ha visto a nadie hasta las 11:00 o 11:30 pm ya que ella se acuesta tarde; trabaja como médico en Utuado en horario regular y en ese momento no está en su propiedad.

37. El testigo Eddiberto Casasnovas Torre es policía en el precinto del barrio Mameyes de Utuado y lleva trabajando desde el 2002 en esa área y hace vigilancia en la patrulla de la policía, que incluyen el área del camino Piedra Gorda, en turnos de 8 a 12 horas, no durante las 24 horas del día.[109]

En consecuencia, en su *Sentencia Parcial* el TPI ordenó lo siguiente:

> [. . .] se ordena a la parte demandada a restablecer y reconstruir la parte del camino Piedra Gorda interrumpido por la excavación y la devuelva a su estado anterior a la excavación, de forma tal que se pueda seguir utilizando por la parte demandante y los vecinos de la comunidad. Se le concede a la parte demandada el término de 90 días, contados a partir de que esta sentencia advenga final y firme, para que se cumpla con lo aquí ordenado, sujeto a la imposición de sanciones por el Tribunal.[110]

Inconforme, el 25 de agosto de 2023, la parte apelante presentó una *Moción de Reconsideración*[111], la cual fue declarada sin lugar de plano[112], conforme a la Regla 47 de las Reglas de Procedimiento Civil de 2009[113], mediante *Resolución* emitida y notificada el 25 de agosto de 2023.[114]

El 7 de septiembre de 2023, compareció la parte apelante mediante un *Recurso de Apelación* en el cual esgrimió la comisión de cuatro (4) errores por el foro primario, a saber:

1. ERRÓ EL HON. TPI AL RESOLVER QUE LA SERVIDUMBRE DETERMINADA EN EL CASO NÚM. LAC93-0013 Y CONFIRMADA POR EL TRIBUNAL DE APELACIONES EN EL CASO KLAN9700044, SIGUE VIGENTE UNA SERVIDUMBRE DE PASO INMEMORIAL EN EL CAMINO PIEDRA GORDA DEL BARRIO MAMEYES ABAJO DE UTUADO, EN FINCA PRIVADA Y A FAVOR DE LOS DEMANDANTES Y DE LA COMUNIDAD DE VECINOS. LA SENTENCIA PARCIAL APELADA PARA TODOS LOS EFECTOS Y ERR[Ó]NEAMENTE DIO COMO "COSA JUZGADA" ENTRE LAS PARTES LA SENTENCIA EN EL CASO

---

[109] Apéndice de la parte apelante, a las págs. 4-8.
[110] *Id.*, a la pág. 15.
[111] *Id.*, a la pág. 48.
[112] *Id.*, a las págs. 49-50.
[113] 32 LPRA Ap. V, R.47.
[114] Apéndice de la parte apelante, a las págs. 49-50.

LAC93-00013 Y KLAN9700044, AUN CUANDO NO SE DAN LOS REQUISITOS DE LA COSA JUZGADA Y TENIENDO COMO IMPACTO QUE SE ESTARÁ BENEFICIANDO A LOS DEMANDANTES AQUÍ APELADOS Y A TERCERAS PERSONAS QUE NO SON PARTE, GRAVANDO LA PROPIEDAD DE LOS DEMANDADOS APELANTES "AD PERPETUAM" Y SIN PREVIA COMPENSACIÓN JUSTA A ESTOS POR PARTE DE LOS APELADOS Y A FAVOR DE PÚBLICO EN GENERAL Y DEL ESTADO SIN PREVIA JUSTA COMPENSACIÓN, Y SIN APORTAR A LOS GASTOS DE CONSERVACIÓN Y REPARACIÓN Y ERRÓ AL DECRETAR QUE NO HA PRESCRITO O SE HA EXTINGUIDO LA SERVIDUMBRE DE PASO INMEMORIAL.

2. ERRÓ EL HON. TPI AL ORDENAR A LA PARTE DEMANDADA A RESTABLECER Y RECONSTRUIR LA PARTE DEL CAMINO PIEDRA GORDA INTERRUMPIDO POR LA EXCAVACION Y LA DEVUELVA A SU ESTADO ANTERIOR A LA EXCAVACIÓN, DE FORMA TAL QUE SE PUEDA SEGUIR UTILIZANDO POR LA PARTE DEMANDANTE **Y LOS VECINOS DE LA COMUNIDAD**. Y CONCEDIENDO A LA PARTE DEMANDADA EL TÉRMINO DE 90 DÍAS, CONTADOS A PARTIR DE QUE LA SENTENCIA ADVENGA FINAL Y FIRME, PARA QUE SE CUMPLA CON LO ORDENADO, SUJETO A LA IMPOSICIÓN DE SANCIONES POR EL TRIBUNAL.

3. ERRÓ EL HON. TPI EN LA APRECIACIÓN Y SUFICIENCIA DE LA PRUEBA DOCUMENTAL SIN QUE LA PARTE DMEANDANTE HAYA ESTABLECIDO SU RECLAMO POR PREPONDERANCIA DE LA PRUEBA Y EN LA APLICACIÓN DEL DERECHO A LOS HECHOS.

4. ERRÓ EL HON. TPI EN LA APRECIACIÓN Y SUFICIENCIA DE LA PRUEBA TESTIFICAL SIN QUE LA PARTE DEMANDANTE HAYA ESTABLECIDO SU RECLAMO POR PREPONDERANCIA DE LA PRUEBA Y EN LA APLICACIÓN DEL DERECHO A LOS HECHOS.

El 2 de noviembre de 2023, las partes presentaron la TPO estipulada conforme a la Regla 76 (C) del Reglamento del Tribunal de Apelaciones.[115] El 14 de noviembre de 2023, la parte apelante presentó su *Alegato Suplementario*. El 7 de diciembre de 2023, la parte apelada presentó su *Alegato en Oposición a Apelación y Réplica a Alegato Suplementario*. Contando con la comparecencia de ambas partes, procedemos a resolver la controversia ante nos.

---

[115] 4 LPRA Ap. XXII-B, R. 76 (C).

## II

### A. Recurso de Apelación

La Regla 52.2(a) de las Reglas de Procedimiento Civil[116], dispone que los recursos de apelación tienen que presentarse dentro de un término jurisdiccional de treinta (30) días desde el archivo en autos de copia de la notificación de la sentencia recurrida. Como es conocido, un plazo jurisdiccional es de carácter fatal. Ello quiere decir que no admite justa causa, es improrrogable, y que su incumplimiento es insubsanable.[117] La correcta notificación de una sentencia es una característica imprescindible del debido proceso judicial.[118] Como corolario de lo anterior, la Regla 13(A) del Reglamento de este Tribunal establece que:

> Las apelaciones contra sentencias dictadas en casos civiles por el Tribunal de Primera Instancia, se presentarán dentro del término jurisdiccional de treinta días contados desde el archivo en autos de una copia de la notificación de la sentencia.[119]
> […]

No obstante, el término de treinta (30) días para acudir en alzada puede quedar interrumpido mediante la presentación oportuna de una moción de reconsideración fundamentada.[120] En tal caso, el curso del término para apelar comienza a partir del archivo en autos copia de la notificación de la resolución que resuelve la moción.[121] Esto, a pesar de que se haya declarado la moción No Ha Lugar.

### B. Las Servidumbres[122]

El Código Civil de Puerto Rico de 1930 (en adelante, Código Civil de 1930) establece que el propietario de un terreno es dueño

---

[116] 32 LPRA Ap. V, R. 52.2 (a).
[117] *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000). *Arriaga v. FSE*, 145 DPR 122, 131 (1998). *Loperena Irizarry v. ELA*, 106 DPR 357, 360 (1977).
[118] *Rodríguez Mora v. García Lloréns*, 147 DPR 305, 309 (1998).
[119] 4 LPRA Ap. XXII-B, R. 13 (A).
[120] 32 LPRA Ap. V, R. 47.
[121] *Id.*
[122] El Código Civil de Puerto Rico de 1930 fue derogado por el Código Civil de Puerto Rico de 2020 aprobado mediante la Ley Núm. 55 de 1 de junio de 2020. Para fines de la presente, el Código Civil derogado es la ley vigente y aplicable a la controversia que nos ocupa.

de su superficie y de lo que está debajo de ella y **puede hacer en él** las obras, plantaciones y **excavaciones que le convengan, salvo las servidumbres legalmente establecidas**.[123] (Énfasis suplido). En particular, el Título VII Capítulo I del Código Civil de 1930 aborda la figura de las servidumbres. La servidumbre es definida como un gravamen impuesto sobre un inmueble en beneficio de otro perteneciente a distinto dueño.[124] A la luz de lo anterior, el inmueble a cuyo favor está constituida la servidumbre se llama predio dominante; el que la sufre, predio sirviente.[125] A su vez, pueden establecerse servidumbres en provecho de una o más personas, o de una comunidad, a quienes no pertenezca la finca gravada.[126]

Las servidumbres pueden ser continuas o discontinuas, aparentes o no aparentes.[127] En lo que aquí concierne, son discontinuas son las que se usan a intervalos más o menos largos y dependen de actos del hombre.[128] Por su parte, son aparentes las que se anuncian y están continuamente a la vista por signos exteriores que revelan el uso y aprovechamiento de estas.[129] A raíz de ello, las servidumbres discontinuas, sean o no aparentes, sólo podrán adquirirse en virtud de título.[130] A tales efectos, la falta de título constitutivo de las servidumbres que no pueden adquirirse por prescripción, únicamente se pueden suplir por la escritura de reconocimiento del dueño del predio sirviente, o por una sentencia firme.[131] Establece que, la existencia de un signo aparente de servidumbre entre dos fincas establecido por el propietario de ambas, se considerará, si se enajenare una, como título para que la servidumbre continúe activa y pasivamente, a no ser que, al tiempo

---

[123] 31 LPRA § 1115, Art. 284.
[124] 31 LPRA § 1631, Art. 465.
[125] *Id.*
[126] 31 LPRA § 1632, Art. 466.
[127] 31 LPRA § 1634, Art. 468.
[128] *Id.*
[129] *Id.*
[130] 31 LPRA § 1653, Art. 475.
[131] 31 LPRA § 1654, Art. 476.

de separarse la propiedad de las dos fincas, se exprese lo contrario en el título de enajenación de cualquiera de ellas, o se haga desaparecer aquel signo antes del otorgamiento de la escritura.[132]

Acorde con el Código Civil de 1930, las servidumbres se extinguen: (i) por reunirse en una misma persona la propiedad del predio dominante y la del sirviente; (ii) por el no uso durante veinte (20) años; (iii) cuando los predios vengan a tal estado que no pueda usarse de la servidumbre; pero ésta revivirá si después el estado de los predios permitiera usar de ella, a no ser que cuando sea posible el uso haya transcurrido el tiempo suficiente para la prescripción, conforme a lo dispuesto en el número anterior; (iv) por la renuncia del dueño del predio dominante; y/o, (v) por la redención convenida entre el dueño del predio dominante y del sirviente, entre otras.[133] En lo que aquí respecta, el término principiará a contarse desde el día en que hubiera dejado de usarse la servidumbre respecto a las discontinuas.[134]

Por su parte el Código Civil de Puerto Rico de 2020 (en adelante, Código Civil de 2020) establece que: "El dominio del suelo se extiende al subsuelo y al vuelo, en la medida en que su aprovechamiento sea posible, con las limitaciones que la ley establece y respetando los gravámenes impuestos [...]".[135] En particular, el Título VI Capítulo III del Código Civil de 2020 aborda la figura de las servidumbres. La servidumbre es definida como el derecho real limitado que recae sobre una finca, denominada finca sirviente, en beneficio de otra finca o de una o varias personas o comunidad individualizadas.[136] Así, las cosas, si la relación es entre fincas, la que recibe la utilidad se llama finca dominante.[137] Así,

---

[132] 31 LPRA § 1655, Art. 477.
[133] 31 LPRA § 1681, Art. 482.
[134] *Id.*
[135] 31 LPRA § 7953, Art. 743.
[136] 31 LPRA § 8501, Art. 935.
[137] *Id.*

pues la utilidad puede consistir en el otorgamiento al titular de la finca dominante o a las personas, según sea el caso, de un determinado uso de la finca sirviente, o en una reducción de las facultades del titular de la finca sirviente.[138]

Como ya mencionamos en el Código Civil de 1930, de igual forma en el del 2020 las servidumbres son catalogadas como continuas o discontinuas, aparentes o no aparentes.[139] Son discontinuas la que se usan a intervalos más o menos largos y depende de actos humanos; mientras que, son aparentes la que se anuncian y están continuamente a la vista por signos exteriores que tienen una relación objetiva con el uso y el aprovechamiento.[140] Respecto a su constitución, las servidumbres discontinuas, sean aparentes o no, solo pueden constituirse mediante negocio jurídico.[141] Por último, las causas de extinción de las servidumbres son:

> (a) por el no uso durante quince (15) años, excepto en el caso de la servidumbre sobre finca propia. Este plazo empieza a contar desde el día en el que deja de usarse la servidumbre respecto a las discontinuas, [...];
> [...]
> (c) por la extinción del derecho del concedente o del derecho real del titular de la servidumbre;
> (d) por la renuncia a la servidumbre por el titular dominante;
> (e) por la redención convenida entre el titular dominante y el sirviente;
> (f) por la pérdida total de la finca sirviente o de la dominante;
> (g) por la falta de declaración expresa de la existencia de servidumbre publicada únicamente por signo aparente sobre finca propia, en el título de enajenación;
> (h) por la desaparición de toda utilidad del uso de la servidumbre o si este uso resulta imposible. La servidumbre no se restablece si posteriormente su ejercicio vuelve a ser útil o posible; o
> (i) por la expropiación forzosa de la finca sirviente.[142]
> [...]

---

[138] *Id.*
[139] 31 LPRA § 8503, Art. 937.
[140] *Id.*, (a) y (b).
[141] 31 LPRA § 8523, Art. 946.
[142] 31 LPRA § 8561, Art. 964.

**C. Deferencia Judicial**

Las determinaciones hechas por los foros inferiores sobre la prueba recibida merecen gran deferencia de los foros revisores.[143] En ese sentido, y como regla general, no debemos intervenir con las determinaciones que este haya efectuado en virtud de la presunción de corrección de la que gozan.[144] A esos efectos, aunque no está exenta de la posibilidad de toda revisión, si la actuación del tribunal a *quo* no está desprovista de base razonable ni perjudica los derechos sustanciales de una parte, lo lógico es que prevalezca el criterio del TPI a quien corresponde la dirección del proceso.[145] Se puede preterir esta deferencia cuando el juzgador de hechos haya incurrido en pasión, prejuicio, parcialidad, error manifiesto, o cuando un análisis integral de la prueba así lo justifique.[146] De igual forma, se podrá intervenir con la determinación del TPI cuando la referida valoración se aparte de la realidad fáctica o resulte inherentemente imposible o increíble.[147] El nivel de pasión, prejuicio o parcialidad que hace falta demostrar para impugnar exitosamente las determinaciones del TPI sobre los hechos varía de caso a caso.[148] Los foros apelativos podremos intervenir con tal apreciación luego de realizar una evaluación rigurosa y que, de esta, surjan serias dudas, razonables y fundadas.[149]

El Tribunal Supremo de Puerto Rico ha determinado que un juez incurre en pasión, prejuicio o parcialidad si actúa movido por inclinaciones personales de tal intensidad que adopta posiciones,

---

[143] *Pueblo v. Pérez Núñez*, 208 DPR 511, 514 (2022).
[144] *Id.,* 529.
[145] S*ierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).
[146] *Id. Pueblo v. Calderón Álvarez,* 140 DPR 627, 644 (1996).
[147] *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021). *Pueblo v. Arlequín Vélez,* 204 DPR 117, 148 (2020). *Pueblo v. Martínez Landrón,* 202 DPR 409, 424 (2019) citando a *Pueblo v. Maisonave*, 129 DPR 49, 63 (1991). *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011). *Pueblo v. Viruet Camacho*, 173 DPR 563, 584 (2009). *Pueblo v. Irizarry*, 156 DPR 780, 789 (2002). *Pueblo v. Acevedo Estrada*, 150 DPR 84, 99 (2000).
[148] *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 775-776 (2013).
[149] *Pueblo v. Pérez Núñez, supra.*

preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna.[150] Por otro lado, un tribunal de justicia incurre en un abuso de discreción cuando el juez: (i) no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; (ii) por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste; o, (iii) no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, los sopesa y calibra livianamente.[151] **Cuando lo que se impugna es la adjudicación de credibilidad y la determinación de los hechos, la conducta, participación y expresiones del juez durante el proceso judicial serán los elementos que se tomarán en consideración para evaluar este incurrió en pasión, prejuicio o parcialidad**.[152] (Énfasis suplido).

En el caso *Torres Pérez v. Colón García,* nuestro Alto Foro expresó:

> Donde se halla la médula del problema adjudicativo es cuando toca al juez dirimir conflictos en la prueba, decidir sobre probabilidades, descartar imposibles, hurgar más allá de los testimonios para encontrar las verdades que muchas veces se ocultan tras meras apariencias, suplir a base de sus propias experiencias y conocimientos de la vida aquellos hechos no aportados articuladamente por los testimonios, pero inescapables al proceso inductivo de su inteligencia.[153]

A luz de lo anterior, la llamada deferencia judicial está predicada en que los jueces de las salas de instancia están en mejor posición para aquilatar la prueba testifical porque tienen la oportunidad de oír, ver y apreciar el comportamiento de la persona

---

[150] *Dávila Nieves v. Meléndez Marín, supra,* 782.
[151] *Pueblo v. Rivera Santiago, 176 DPR 559, 580 (2009).*
[152] *Dávila Nieves v. Meléndez Marín, supra,* 776.
[153] *Torres Pérez v. Colón García,* 105 DPR 616, 623 (1977).

testigo.[154] Por ello, la valoración que lleva a cabo el foro primario se presume correcta.[155] Recalcamos que, **la tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez a la prueba presentada**.[156] (Énfasis suplido). Por su parte, un foro apelativo cuenta solamente con "récords mudos e inexpresivos", **por lo que se le debe respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos**.[157] (Énfasis suplido). No obstante, si la apreciación de la prueba no representa el balance más racional, justiciero y jurídico de la totalidad de la prueba y cuando la evaluación se distancie de la realidad fáctica o esta es inherentemente imposible o increíble tenemos la responsabilidad ineludible de intervenir.[158] Sin embargo, a pesar de que existe esta norma de deferencia judicial, también hemos indicado que, cuando las conclusiones de hecho del foro de instancia estén basadas en prueba pericial o documental, el tribunal revisor se encuentra en la misma posición que el foro recurrido.[159]

En consecuencia, al este tribunal apelativo enfrentarse a la tarea de revisar las determinaciones del foro de instancia, no debe intervenir con las determinaciones de hechos, con la apreciación de la prueba ni con la adjudicación de credibilidad efectuadas por el mismo, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad; (ii) incurrió en un craso abuso de discreción; o, (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[160]

---

[154] *Santiago Ortiz v. Real Legacy et al.*, *supra*. *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 142 (2013).

[155] *Id. Pueblo v. Santiago*, 176 DPR 133, 148 (2009). *Pueblo v. Acevedo Estrada*, *supra*.

[156] *Dávila Nieves v. Meléndez Marín*, *supra*, 771.

[157] *Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 177 DPR 345, 356 (2009). *Trinidad v. Chade*, 153 DPR 280, 291 (2001).

[158] *Santiago Ortiz v. Real Legacy et al.*, *supra*. *González Hernández v. González Hernández*, *supra*.

[159] *González Hernández v. González Hernández*, Id.

[160] *González Hernández v. González Hernández*, *Id.*, 776. *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 811 (2009). *Rivera y otros v. Bco. Popular*, 152

**III**

Según surge de la relación de hechos que hemos narrado, en el caso ante nuestra consideración se emitió una *Resolución* sobre una *Solicitud de Sentencia Sumaria Parcial* presentada por la parte apelada. Como sabemos, dicha solicitud fue denegada por el Tribunal *a quo*. Sin embargo, es de ver que allí el foro primario estableció qué era lo que quedaba controvertido y que debía adjudicarse mediante la presentación de prueba y que, por ello, se hacía necesario celebrar un Juicio en su Fondo. Conforme se desprende de la *Sentencia Parcial* apelada, la primera instancia judicial estableció que en el caso ante nos, no estaba en controversia ni se estaba cuestionando la servidumbre por signo aparente y tiempo inmemorial establecida en el caso L AC 93-0013 y confirmada por el Tribunal de Apelaciones en el caso KLAN9700044. Dispuso que tampoco estaba en controversia si dicha servidumbre gravaba la propiedad que hoy le pertenece a los aquí apelantes. En cambio, recalcamos que, el Tribunal a *quo* dispuso que la controversia era determinar si la servidumbre en cuestión se extinguió por el desuso por más de veinte (20) años o por haber quedado en un estado que impidiera su utilidad.

A tenor con lo anterior y luego de haber dispuesto sobre una *Solicitud de Sentencia Sumaria Parcial*, mediante la cual consignó sus determinaciones de hechos[161], y estimó lo controvertido, así como de haber celebrado una *Vista Ocular* en el lugar de la controversia en cuestión y, por último, justipreciar la prueba recibida durante el Juicio en su Fondo, dictaminó que la servidumbre que grava la propiedad de los aquí apelantes sigue

---

DPR 140, 155 (2000). *Pueblo v. Irizarry, supra. Pueblo v. Maisonave, supra*, 62-63 (1991).

[161] Hacemos constar que dichas determinaciones de hechos incontrovertidos, emitidas producto de la *Resolución* emitida el 18 de julio de 2022, y que advino final y firme, se hicieron formar parte integral de la *Sentencia Parcial* apelada. Véase Apéndice de la parte apelante, a las págs. 32-43 y 1-15.

vigente, por lo que no ha prescrito. En virtud de lo anterior, el foro primario ordenó a los aquí apelantes a reestablecer y reconstruir la parte del Camino interrumpido por la excavación y a devolverla a su estado anterior a la excavación. Con lo anterior, se podría seguir utilizando por la parte apelada y los vecinos de la comunidad. Para ello, concedió un término a la parte apelante, so pena de sanciones. Luego de un análisis del expediente en su totalidad, incluyendo la TPO, colegimos que los errores señalados no fueron cometidos y procede *confirmar* la *Sentencia Parcial* apelada. Veamos.

Debido a su estrecha relación, discutiremos el primer, tercer y cuarto error en conjunto; mientras que, el segundo error, se discutirá de forma separada.

Los primeros tres errores versan sobre la apreciación de la prueba del foro primario hacia la prueba desfilada durante el Juicio en su Fondo, tomando en consideración las determinaciones de hechos que surgen de la *Resolución* emitida el 18 de julio de 2022, mediante la cual se denegó la *Solicitud de Sentencia Sumaria Parcial* presentada por la parte apelada. En primer lugar, es un hecho cierto que, sobre la propiedad en controversia, existe una servidumbre de tiempo inmemorial, determinada en el caso L AC93-0013. La determinación sobre si el Camino era o no una servidumbre no es una controversia viva, sino una adjudicada y final, por lo que no tenemos facultad para intervenir con la misma.

La controversia real y viva era determinar si dicha servidumbre había prescrito o se había extinguido. Para ello, el foro primario en primer lugar celebró una *Vista Ocular*, producto de la cual ordenó que se le diera paso a la parte apelada por un camino alterno mientras se resolvía la controversia. Luego en el Juicio en su Fondo, bifurcó el proceso para solo atender el asunto ante nos y postergó la evaluación de daños. Así que, durante el Juicio, recibió prueba testifical y documental. Con todo, los testigos de ambas

partes fueron interrogados y contrainterrogados ampliamente. Destacamos que el tribunal *a quo* también intervino e hizo preguntas para aclarar y, de igual forma, permitió a los representantes legales realizar preguntas en torno a las suyas. Quedando el caso sometido para el dictamen, la primera instancia judicial emitió la *Sentencia Parcial* apelada.

Debemos reiterar que, la llamada deferencia judicial está predicada, como surgió en este caso, en que los jueces de las salas de instancia están en mejor posición para aquilatar la prueba testifical porque tienen la oportunidad de oír, ver y apreciar el comportamiento de las personas testigos, quienes en este caso fueron ocho (8) testigos, cuatro (4) de cada parte.[162] Sin embargo, esta Curia cuenta solamente con "récords mudos e inexpresivos", por lo que le debemos respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos.[163]

De la prueba desfilada y creída durante el Juicio y cónsono a lo que surge de la TPO, se desprende que, en efecto, el Camino estuvo siendo utilizado por la parte apelada y que el periodo que marca inescapablemente la interrupción del uso de este fue la excavación realizada por la parte apelante en el año 2021. De los autos no se desprende otra prueba que tienda a establecer que el Camino estuvo en desuso. Además, es de ver que, previo a la excavación, el mismo se utilizaba tanto para asuntos de trabajo, agricultura, así como para actividades cotidianas de la parte apelada. Además, quedó demostrado que, aunque el Camino no es perfecto, le han provisto el mantenimiento para poder caminar y transitar. Juzgamos, además, que las determinaciones de hecho emitidas por el Tribunal apelado se sustentan en la prueba

---

[162] *Santiago Ortiz v. Real Legacy et al.*, *supra*. *Meléndez Vega v. El Vocero de PR*, *supra*.

[163] *Autoridad de Acueductos y Alcantarillados de Puerto Rico*, *supra*. *Trinidad v. Chade*, *supra*.

presentada. Debemos recordar que, los foros apelativos podremos intervenir con la apreciación del TPI, luego de realizar una evaluación rigurosa y que, de esta, surjan serias dudas, razonables y fundadas.[164] Consecuentemente, las decisiones discrecionales que toma el TPI no serán revocadas a menos que se demuestre que ese foro abusó de su discreción.[165]

En el segundo error esgrimido, la parte apelante plantea que el foro primario erró al ordenarles a reestablecer y reconstruir el Camino interrumpido por la excavación y a devolverlo a su estado anterior para que se pueda seguir utilizando. Sin intención de repetir, el expediente ante nos habla por sí. El Camino era la servidumbre determinada en el caso L AC93-0013. La parte apelante realizó una excavación en el Camino, privando a la parte apelada de utilizar la referida servidumbre. Luego de la celebración del Juicio en su Fondo y de emitidas sendas determinaciones de hecho, el foro primario determinó que no se ha extinguido la servidumbre y, según adelantemos, no vimos razón para sustituir su criterio con el nuestro. En virtud de lo anterior, y no habiéndose demostrado un abuso de discreción, error manifiesto, prejuicio o parcialidad, en dicha determinación, no vemos razón alguna para intervenir con lo actuado por lo que juzgamos que dicho error no fue cometido.

Sostenemos que, la tarea de adjudicar credibilidad y determinar lo que realmente ocurrió, depende en gran medida de la exposición del juez a la prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento de la persona testigo mientras ofrece su testimonio y escuchar su voz.[166] Como es sabido, el TPI está en mejor posición que esta Curia para llevar a cabo esta importante tarea judicial.[167] Recordemos que, nuestro trasfondo

---

[164] *Pueblo v. Pérez Núñez, supra.*
[165] *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434 (2013). *Pueblo v. Rivera Santiago, supra.*
[166] *Dávila Nieves v. Meléndez Marín, supra.*
[167] *Id.*

doctrinario recae en que, nuestro sistema judicial es uno adversativo de derecho rogado que descansa en la premisa de que las partes, cuidando sus derechos e intereses, son los mejores guardianes de la pureza de los procesos, y de que la verdad siempre aflore salga a relucir.[168] Es por todo lo anterior que, juzgamos procede *confirmar* la Sentencia Parcial apelada.

**IV**

Por los fundamentos que anteceden, se *confirma* la *Sentencia Parcial* apelada. Se devuelve el caso al TPI para la continuación de los procedimientos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[168] *Fundación Surfrider y otros v. ARPe,* 178 DPR 563, 585 (2010).